**RUTMAN WINE COMPANY,
Plaintiff-Appellant,**

v.

**E. & J. GALLO WINERY,
Defendant-Appellee.**

No. 86–1983.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 1987.

Decided Sept. 30, 1987.

Bernard S. Goldfarb, Cleveland, Ohio, for plaintiff-appellant.

G. Kip Edwards (argued), Matthew D. Powers, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for defendant-appellee.

Before NOONAN and O'SCANNLAIN, Circuit Judges, and STOTLER,* District Judge.

STOTLER, District Judge:

Rutman Wine Company ("Rutman") appeals from the district court's dismissal with prejudice of Counts 1–4 of its Second Amended Complaint. These counts charge appellee E. & J. Gallo Winery ("Gallo") and nonparty Wine Distributors, Inc. ("WDI") with nonprice-related violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1986), sections 2(d) and 2(e) of the Robinson-Patman Act, 15 U.S.C. §§ 13(d), (e) (1986), and Ohio's Valentine Antitrust Act,

---

* Honorable Alicemarie H. Stotler, United States District Judge, Central District of California, sitting by designation.

Ohio Revised Code §§ 1331.01–.14.[1] Rutman seeks not less than $7 million in damages and injunctive relief requiring, *inter alia,* that Gallo reinstate Rutman as a distributor.

The Northern District of Ohio transferred the case on defendant's motion to the Eastern District of California in 1984. The district court dismissed the First Amended Complaint because plaintiff's allegations of injury to itself did not establish the required injury to competition. Although plaintiff amended, the court dismissed counts of the Second Amended Complaint due to the same deficiency. The court also concluded that defendant's alleged discrimination against Rutman in providing certain services did not show that plaintiff's ability to compete with favored purchasers of defendant's products was impaired. Plaintiff's requests to conduct discovery and amend anew were denied.

Since essential elements of claims under sections 1 and 2 of the Sherman Act and under section 2(e) of the Robinson-Patman Act are missing from appellant's third effort to state such claims, the district court's dismissal of Counts 1–4 is affirmed.

## I.

### STANDARD OF REVIEW

■ This Court reviews *de novo* a district court's dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). This Court must thus consider whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## II.

### SUMMARY OF COMPLAINT

Rutman complains that Gallo terminated its distributorship agreement as part of a conspiracy or combination with WDI to restrain trade unreasonably and to effectuate Gallo's actual or attempted monopolization of the wine products market in Cuyahoga County, Ohio. In furtherance of this scheme, Gallo purportedly discriminated against appellant in favor of WDI. Count 1 alleges violations of both sections 1 and 2 of the Sherman Act; Count 3 contains the Robinson-Patman allegations; Counts 2 and 4 are based on the Ohio antitrust statute.

Appellant is an Ohio corporation engaged in the import and distribution of wines and beer in Cuyahoga County, Ohio. It distributes to approximately 1,500 retail outlets in and around Cleveland. The sale of wine products comprises at least 99% of Rutman's overall business. Approximately 95% of Rutman's products are purchased from out-of-state suppliers. It spends approximately $6 million per year for its wine products.

Gallo is a California corporation which manufactures relatively low-priced domestic wines. It possesses 25–33% of the wine sales market in the U.S. Rutman distributed Gallo wine for nearly forty years prior to its termination in August 1984. It was the largest wine vendor in the county and sold products of twenty-nine different wine

---

**1.** Counts 5 and 6 of the Second Amended Complaint alleging breach of contract and Ohio Alcoholic Beverage Franchise Act violations remain pending before the district court and are not the subject of this appeal. The district court's Order dismissing Counts 1–4 of the Second Amended Complaint also directed the entry of judgment on these counts pursuant to F.R. Civ.P. 54(b). Such orders are to include "specific findings setting forth the reasons [therefor]" ... including "a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal and factual issues that are similar to those contained in the claims still pending before the trial court." *Morrison-Knudsen, Inc. v. Archer,* 655 F.2d 962, 965 (9th Cir.1981). None appear in the trial court's Order. However, "the lack of *Morrison-Knudsen* findings is not a jurisdictional defect." *Alcan Aluminum Corp. v. Carlsberg Fin. Corp.,* 689 F.2d 815, 817 (9th Cir.1982). In addition, since the parties briefed the merits, the Court concludes that it would be a waste of judicial resources to remand because of the absence of these findings.

manufacturers, Gallo's competitors among them. Rutman exclusively distributed Inglenook and Taylor California Cellar wines, Gallo's chief competitors in the county's retail wine market. Gallo products, however, constituted 25% of Rutman's sales for which appellant spent approximately $1.5 million per year.

In the early 1970's, Gallo established WDI as another wholesale distributor of wine products in Cuyahoga County. Gallo provided material assistance to WDI which was not provided to any of its competitors. On information and belief, appellant alleges that 1) Gallo obtained a warehouse facility for WDI's use and subleased it to WDI on favorable terms; 2) Gallo "took away" several products so that WDI could have the benefit of selling an established product without competition; 3) Gallo provided WDI with favorable financing options; 4) Gallo provided WDI with point-of-sale advertising and promotional materials not made available to Rutman; 5) Gallo provided advertising material to WDI which it refused to provide to Rutman, and 6) Gallo utilized advertisements of products sold by WDI and would not advocate products sold by Rutman.

The parties' relationship was governed by a 1977 non-exclusive Agreement of Distributorship. Gallo required Rutman to regularly report its sales level of wine products manufactured by Gallo's competitors. Thus, Gallo was able to monitor the level of appellant's sales of products, including those of Gallo's chief competitors in the county.

Gallo terminated Rutman via letter received June 18, 1984, effective sixty days thereafter. The letter allegedly resulted from a number of private or secret communications between Gallo and WDI representatives, and was issued with the purpose and effect of preventing, reducing, and unreasonably limiting competition in the market for the importation and the sale of wine products in Cuyahoga County. Such termination of appellant constituted an attempt to monopolize and/or to form a combination with WDI to monopolize the relevant market, all to the detriment of the public interest. The termination purportedly has injured and will continue to injure Rutman's ability to compete, to retain its customers, and to remain as a viable force in the business of wholesale wine distribution.

Appellant alleges that Gallo knows that the loss of the Gallo line in Cuyahoga County "could either drive Rutman totally out of business or force Rutman to implement severe cutbacks in personnel and resources so as to preclude or substantially diminish Rutman's ability to sell other brands of wine products competitive to Gallo" in that geographical market. Gallo's products purportedly serve as "door openers" or "call items" and facilitate Rutman's access to retail outlets. The loss of "door openers" has allegedly caused appellant to lose customers for the sale of wine products in the county and lessened competition in the sale of other product lines in the same geographical market by "frustrating" Rutman's ability to sell those other lines "through the cutbacks in personnel and services resulting from Gallo's wrongful termination of Rutman."

Rutman further alleges that with full knowledge that the elimination of Rutman as a distributor would hinder or eliminate competition in the sale of wine products competitive to Gallo in the county, appellee, WDI and unnamed co-conspirators engaged in an unlawful combination and conspiracy in unreasonable restraint of trade and commerce. This combination consisted in part of a continuing agreement, understanding and concert of action to engage in a group boycott of plaintiff, to willfully fail and refuse to provide plaintiff with products and supplies, including point-of-sale advertising and promotional materials, and to refrain from doing business with plaintiff.

## III.

### PER SE v. RULE OF REASON ANALYSIS

Appellant urges that a *per se* analytical standard is appropriate. Appellant relies on *Klor's, Inc. v. Broadway-Hale Stores,* 359 U.S. 207, 79 S.Ct. 705, 3

L.Ed.2d 741 (1959), for the proposition that dealer terminations resulting from group boycotts where manufacturers and distributors conspire to deprive a distributor of the goods he needs to compete, are *per se* violations of section 1 of the Sherman Act. *Klor's* concerned several manufacturers and distributors who conspired amongst themselves and with a major retailer, Broadway-Hale, either not to sell to Klor's or to sell to it only at discriminatory prices and highly unfavorable terms. *Klor's* is distinguishable in that it alleges a widespread horizontal and vertical combination. *Klor's* expressly stated: "This is not a case of a single trader refusing to deal with another, nor even of a manufacturer and a dealer agreeing to an exclusive distributorship." 359 U.S. at 212, 79 S.Ct. at 709. The Court thus implied that the latter situations do not lend themselves to a *per se* standard of analysis.

*Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775, *reh'g. den.*, 466 U.S. 994, 104 S.Ct. 2378, 80 L.Ed.2d 850 (1984), reaffirmed that only vertical arrangements accompanying or implementing price-fixing schemes are to be considered *per se* violations of the antitrust laws; other vertical arrangements are to be tested under the Rule of Reason. *See also Car Carriers v. Ford Motor Company*, 745 F.2d 1101, 1108 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Though the Second Amended Complaint alleges that unnamed co-conspirators combined with Gallo and WDI in a concerted refusal to deal, appellant never alleges the existence of a horizontal or vertical arrangement which would trigger a *per se* analysis.

Gallo and WDI are not competitors. Appellant's claims of discrimination are vertical and nonprice-related. Any arrangement between them involving a group boycott or concerted refusal to deal with Rutman necessarily consists of a vertical arrangement to which the Rule of Reason applies. *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1337 n. 2 (9th Cir.1983). *See also Fine v. Barry and Enright Productions*, 731 F.2d 1394 (9th

Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984); *Cascade Cabinet Co. v. Western Cabinet and Millwork*, 710 F.2d 1366 (9th Cir.1983).

## IV.

### SECTION 1 OF THE SHERMAN ACT

■ Count 1 alleges that Gallo violated section 1 of the Sherman Act. This section provides in part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony,....

Rutman invokes section 4 of the Clayton Act, 15 U.S.C. § 15 (1986), which permits private civil actions to be brought by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws ...".

■ Indispensable to any section 1 claim is an allegation that *competition* has been injured rather than merely competitors. *See, e.g., Calculators*, 724 F.2d at 1338. Appellant contends that because it is the exclusive dealer of two of Gallo's chief competitors, the injury to its own ability to compete in turn harms the public by substantially reducing or eliminating competition in the sale of wine products in Cuyahoga County. The loss of Gallo products also allegedly deprives appellant of "door openers" which facilitate Rutman's sale of Gallo's competitors' products. Rutman claims appellant's termination was a means employed by Gallo to reduce competition in the wine product industry in Cuyahoga County.

While appellant clearly pleads injury to itself, its conclusion that competition has been harmed thereby does not follow. Rutman charges that its termination was accomplished to prevent, reduce, and unreasonably limit competition in the market. Gallo responds that injury to appellant and

injury to Gallo's competitors are not injury to competition. Appellee persuasively argues that appellant can prove no set of facts consistent with the allegations of its complaint which would entitle it to relief.

■■■ First, an agreement between a manufacturer and a distributor to establish an exclusive distributorship is not, standing alone, a violation of antitrust laws, and in most circumstances does not adversely affect competition in the market. *A.H. Cox & Co. v. Star Machinery*, 653 F.2d 1302, 1306–07 (9th Cir.1981). When a manufacturer and a distributor so agree, the termination of other distributors may necessarily result. No antitrust violation occurs unless the exclusive agreement is intended to or actually does harm competition in the relevant market.

> That one distributor will be hurt when another succeeds in taking its line will be axiomatic in some markets ... but the intent to cause that result is not itself prohibited by the antitrust laws. The intent proscribed by the antitrust laws lies in the purpose to harm competition in the relevant market, not to harm a particular competitor.

*Id.* at 1307 (citation omitted). *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 803 (9th Cir.1976), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977) is in accord:

> A termination is not unlawful because of some adverse effect on the distributor's business, even if the effect is the elimination of the distributor from the market. The complaining distributor must show that the refusal to deal was intended to or did bring about some restraint of trade beyond the loss of business suffered by the distributor or the market's loss of a distributor-competitor.

■■ The Seventh Circuit in *Great Escape, Inc. v. Union City Body Co., Inc.*, 791 F.2d 532 (7th Cir.1986), adopted a position similar to appellee's, stating:

> [P]laintiff's argument that Great Escape will be forced out of business and that this development will have an anticompetitive effect through loss of an option for consumers is similarly without merit

... "[T]here is a sense in which eliminating even a single competitor reduces competition. But it is not the sense that is relevant in deciding whether the antitrust laws have been violated." Competition means that some may be forced out of business. The antitrust laws are not designed to guarantee every competitor tenure in the marketplace.

*Id.* at 540 (citation omitted). The mere fact of reduced sales of other brands by one wholesaler is not enough to establish an impact on competition.

The allegation of specific intent to terminate a distributor with the purposeful intent to bring about harm to competition is conclusory in the absence of anticompetitive conduct from which such specific intent may be inferred. As stated in *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924 (9th Cir.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981), a court must ask whether plaintiff "could show any set of facts, consistent with the allegations of its complaint, that would constitute a violation of the antitrust laws." Gallo relies upon *Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.*, 691 F.2d 241 (6th Cir.1982). Appellant Dunn & Mavis, a provider of auto transport services in Detroit, alleged that Nu-Car Driveaway, Inc., a competitor, conspired with Chrysler Motors to drive plaintiff out of business. Chrysler and Nu-Car conspired and made plans for the termination of Dunn & Mavis in order to eliminate existing competition in the relevant transportation market. The Court of Appeals affirmed the dismissal of claims under sections 1 and 2, indicating that "[t]he complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose." *Id.* at 243.

■■ Appellant alleges precisely what the appellant in *Dunn & Mavis* alleged: that a supplier and a distributor/competitor conspired to terminate it for the purpose of reducing or eliminating competition in the relevant geographical market. Termination of one distributor in order to estab-

lish an exclusive distributorship, even with the knowledge that harm to competition will ensue, does not create an inference that harm to competition is intended; a fortiori Rutman may not rest its allegation of purposeful conduct solely on such speculation. On these facts, the specific intent to harm competition is insufficiently pleaded. As stated in *Car Carriers:* "The pleader may not evade these requirements by merely alleging a bare legal conclusion; if the facts 'do not at least outline or adumbrate' a violation of the Sherman Act, the plaintiffs 'will get nowhere merely by dressing them up in the language of antitrust.'" 745 F.2d at 1106 (quoting *Sutliff, Inc. v. Donovan Companies,* 727 F.2d 648, 654 (7th Cir.1984)).

### V.

### SECTION 2 OF THE SHERMAN ACT

■ Count 1 also contains a claim under section 2 of the Sherman Act which provides in part:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony,....

■ The three requisite elements of a monopolization claim are: 1) possession of monopoly power in the relevant market, 2) willful acquisition or maintenance of that power, and 3) causal "antitrust" injury. *Hunt-Wesson,* 627 F.2d at 924.

■ A claim for attempted monopolization under section 2 also consists of three elements: 1) specific intent to control prices or destroy competition in the relevant market, 2) predatory or anticompetitive conduct directed to accomplishing the unlawful purpose, and 3) a dangerous probability of success. *Foremost Pro Color, Inc. v. Eastman Kodak Co.,* 703 F.2d 534, 543–44 (9th Cir.1983), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984).

Monopoly power in the relevant geographical market of Cuyahoga County is an essential element for a monopolization

claim. Appellant pleads that Gallo controls between 25–33% of the market for wine sales in the *United States.* However, appellant makes no statement as to Gallo's market share in Cuyahoga County. Appellant states that Gallo comprises 25% of Rutman's business, and that Rutman is the largest wine distributor in the county. Yet, appellant does not specify that Gallo comprises 25% of its business in Cuyahoga County. Even assuming the 25% refers to Gallo's share of Rutman's business in the county, Rutman thereby admits that three-quarters of its business is attributable to the twenty-eight other product lines it carries, among which are Inglenook and Taylor, Gallo's two largest competitors in the county. An allegation of monopoly power is an explicit element of actual monopolization and may be an implicit requirement of attempted monopolization's third prong relating to the dangerous probability of success. *California Computer Products, Inc. v. IBM Corp.,* 613 F.2d 727, 737 (9th Cir.1979) (dangerous probability of success may be inferred from direct proof of market power or from proof of specific intent and anticompetitive conduct). Appellant's section 2 claim cannot lie because it lacks an allegation that Gallo possesses monopoly power in the relevant geographical market.

Rutman's section 2 claim also fails because it does not sufficiently allege a specific intent to monopolize the wine market in Cuyahoga County and because Rutman fails to allege anticompetitive conduct. As addressed in the discussion regarding section 1, above, appellant's allegations of specific intent and anticompetitive conduct are insufficient to withstand a motion to dismiss. The absence of these elements in appellant's attempted monopolization claim leaves that aspect of Count 1 deficient as well.

### VI.

### SECTIONS 2(D) AND (E) OF THE ROBINSON–PATMAN ACT

■ Count 3 is brought under the Robinson-Patman Act, 15 U.S.C. §§ 13(d) and (e), which provide:

(d) It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

(e) It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

*World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1479–80 (10th Cir.), *cert. denied*, 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985), cited by both parties, enumerates the elements of proof required in a trial for Robinson-Patman Act violations. We may reasonably demand that a plaintiff allege those elements in its complaint. First, there must be an allegation of actual injury attributable to something the antitrust laws were designed to prevent. Next, plaintiff must allege more than failing to receive a promotional allowance; it must allege that this disadvantage adversely affected its ability to compete with favored competitors.

In *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981) the Supreme Court interpreted section 2(a) in the setting of original sales (not resales, as here) between the manufacturer and plaintiff auto dealer. The Court held that even if the defendant's sales incentive program resulted in price discrimination in violation of section 2(a),

no recovery for treble damages would automatically lie. Said the Court: "[P]roof of a violation does not mean that a disfavored purchaser has been actually 'injured' within the meaning of § 4 [section 4, Clayton Act, 15 U.S.C. § 15 (1986)]." *Id.* 451 U.S. at 562, 101 S.Ct. at 1927.

In *World of Sleep*, the Robinson-Patman verdict under section 2(d) was reversed because there was no evidence that plaintiff's ability to compete with favored purchasers of defendant La-Z-Boy Chair Co. was in any way impeded by its failure to receive an advertising allowance. Plaintiff did not show that the allowance enabled favored competitors to lower their prices and divert sales, or that plaintiff was required to lower its prices to an unprofitable level in response to such low prices.

Taken together, *World of Sleep* and *J. Truett Payne* establish that the requisite injury and damages may not be presumed from a showing of discrimination alone. Appellant, therefore, may not maintain its claim for injury and damages based solely on its allegation that discrimination in providing services occurred. In addition, Rutman must allege that its failure to receive certain services affected its ability to compete with its allegedly favored competitor. Although appellant does state that the discrimination seriously and irreparably injured Rutman's ability to compete, it fails to allege anyone with whom it is unable to compete. Thus the order of dismissal was proper.

## VII.

### OHIO'S VALENTINE ANTITRUST ACT

Counts 2 and 4 of the Second Amended Complaint state claims for antitrust violations under the Ohio Valentine Antitrust Act. Count 2 essentially provides that the factual allegations under the Sherman Act claims also constitute a claim under the Ohio Valentine Antitrust Act. The Valentine Act should be interpreted in light of the Sherman Act after which it was patterned. *See Richter Concrete Corp. v. Hilltop Basic Resources, Inc.*, 547 F.Supp.

893, 920 (S.D.Ohio 1981), *aff'd*, 691 F.2d 818 (6th Cir.1982); *C.K. & J.K., Inc. v. Fairview Shopping Center Corp.* 63 Ohio St.2d 201, 204, 407 N.E.2d 507, 509 (1980). Since we affirm the dismissal of the federal antitrust claims, the state antitrust claims in Count 2 are dismissed as well.

 Count 4 purports to state a claim analogous to the Robinson-Patman Act claim under the Valentine Act. However, as appellee points out, this Act contains no provision authorizing such a cause of action. Gallo further cites authority for the proposition that Ohio has no statutory provision which deals with price discrimination, let alone discrimination in providing services. *E.g.* 4 Trade Reg. Rptr. (CCH) ¶ 33,830 (1982). Appellant cites no contrary authority. The Court affirms dismissal of Count 4.

## VIII.

### THE DISTRICT COURT'S DENIAL OF LEAVE TO AMEND

 A district court's denial of leave to amend is reviewed under the abuse of discretion standard. *Long v. Bureau of Economic Analysis*, 646 F.2d 1310, 1321 (9th Cir.) *vacated on other grounds*, 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981). Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile. The district court's written order identified the defects in the First Amended Complaint and then permitted Rutman to amend its complaint once again. The Second Amended Complaint did not cure the deficiencies. The district court could reasonably conclude that further amendment would be futile and therefore did not abuse its discretion in denying leave to amend a second time.

## IX.

### THE DISTRICT COURT'S DENIAL OF DISCOVERY

 Appellant argues that the district court should not have dismissed its claims without permitting discovery. It seeks per-

mission to conduct discovery prior to the filing of any amendment which might be authorized by this Court. As Gallo points out, Rutman's position is unsupported and defies common sense. The purpose of F.R. Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery. *Greene v. Emersons Ltd.*, 86 F.R.D. 66, 73 (S.D.N.Y.1980), *aff'd*, 736 F.2d 29 (2d Cir.1984). In antitrust cases this procedure especially makes sense because the costs of discovery in such actions are prohibitive. *See, e.g., Car Carriers*, 745 F.2d at 1106–07. As observed in *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 553 (7th Cir.1980), "if the allegations of the complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility." It is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.

## X.

### CONCLUSION

The district court's dismissal of Counts 1 and 2 of the Second Amended Complaint are affirmed because plaintiff alleges no set of facts which could sustain its antitrust claims therein. Dismissal of Count 3 is affirmed because no allegation appears that Rutman's comparative ability to compete was damaged by Gallo's alleged discrimination. The Ohio state law claims also fail.

No abuse of discretion has occurred in denying further amendment, nor in denying discovery.

The judgment of the district court is therefore AFFIRMED.