# In re SUPER PREMIUM ICE CREAM DISTRIBUTION ANTITRUST LITIGATION.

**This document relates to: ALL CASES.**

**The HAAGEN–DAZS COMPANY, INC., et al., Plaintiffs,**

v.

**DOUBLE RAINBOW GOURMET ICE CREAMS, INC., et al., Defendants.**

**MDL No. 682, No. C–85–6553–CAL.**

United States District Court, N.D. California.

June 23, 1988.

See also 639 F.Supp. 282.

Pillsbury, Madison & Sutro, William C. Miller, Reginald D. Steer, Brian D. Bellardo, San Francisco, Cal., for plaintiffs.

Patricia E. Henle, Alioto & Alioto, San Francisco, Cal., John H. Boone, Law Office of John H. Boone, San Francisco, Cal., for defendants.

## OPINION AND ORDER FOR SUMMARY JUDGMENT

LEGGE, District Judge.

Cross motions for summary judgment have been made by all of the present par-

ties to this litigation, Haagen–Dazs, Double Rainbow and Two Count. The motions were briefed, argued and submitted. The court has reviewed the moving and opposing papers, the factual record on which the motions and oppositions are based, the record in the case, the arguments of counsel, and the applicable authorities. The court directs that summary judgment be entered in favor of Haagen–Dazs and against Double Rainbow and Two Count, as discussed below.

### The Cases

This multi-district litigation presently consists of three actions. No. C–85–6553 is brought by Haagen–Dazs against Double Rainbow and Two Count. Haagen–Dazs seeks a declaration that its arrangements with its distributors do not violate law, and that certain acts of Double Rainbow constitute unfair competition under California law. No. C–86–0853 is brought by Double Rainbow against Haagen–Dazs. It alleges violations of sections 1 and 2 of the Sherman Act and two common law torts. Action No. C–87–2471 is brought by Two Count against Haagen–Dazs. It alleges violations of California's Cartwright Act, breach of contract, unfair business practices under California statute, and three state law torts.

All three of these actions have one central issue: Whether Haagen–Dazs can lawfully have exclusive distribution. That is, whether Haagen–Dazs can sell only to distributors who agree not to sell competing brands of ice cream. The central facts are simple and undisputed. Two Count was formerly a Haagen–Dazs distributor. When Two Count decided to sell other brands of ice cream competing with Haagen–Dazs, including Double Rainbow ice cream, Haagen–Dazs advised Two Count that it would terminate Two Count as a distributor unless Two Count agreed to handle only Haagen–Dazs. Two Count declined to do so. Haagen–Dazs then terminated Two Count and obtained another dis-

tributor. Haagen–Dazs believes that exclusive distribution is in compliance with law, while Two Count and Double Rainbow contend that exclusive distribution violates state and federal antitrust laws.

### The Summary Judgment Motions

Discovery is virtually completed. A trial date had been set, but was vacated for the making and determination of these summary judgment motions.

In its summary judgment motion, Haagen–Dazs in essence seeks complete summary judgment against Double Rainbow and Two Count on their claims against Haagen–Dazs. In No. C–86–0853, it seeks summary judgment on Double Rainbows' three antitrust claims and two common law claims. It also seeks summary judgment in No. C–87–2471 on Two Count's state antitrust claims, breach of contract claim, and three common law claims. In its own action, No. C–85–6553, Haagen–Dazs seeks a declaration that its distribution arrangements do not violate law.[1] Double Rainbow and Two Count oppose Haagen–Dazs' motion, and seek summary judgment of their own declaring (a) that the relevant market is "super premium" ice cream, and (b) that by virtue of collateral estoppel, Haagen–Dazs' policy of exclusive distribution is coercive.

### The Factual Record

Since discovery has been completed, the parties have been able to submit to the court an extensive factual record. In evaluating that factual record, and its effect on these summary judgment motions, the court is guided by the principles for evaluating summary judgment motions in antitrust cases stated by the United States Supreme Court in *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 585–588, 106 S.Ct. 1348, 1355–57, 89 L.Ed. 2d 538 (1986). The parties opposing summary judgment, here primarily Double Rainbow and Two Count, must do more than simply show that there is some doubt

---

1. The court does not interpret Haagen–Dazs' motion to seek summary judgment on its sec- ond cause of action in No. C–85–6553.

as to material facts. They must come forward with "specific facts showing that there is a *genuine issue for trial.*" Id. at 587, 106 S.Ct. at 1356 (emphasis in original). And where the record taken as a whole could not lead a rational trier of fact to find for the opposing parties, there is no genuine issue for trial.[2] Id. The record in this case demonstrates that most of the material facts are indeed undisputed.

Haagen–Dazs[3] manufactures and sells ice cream products and other frozen deserts, including Haagen–Dazs brand ice cream. Its products are sold to distributors, who in turn resell them to grocery stores, restaurants and other retailers. Haagen–Dazs ice cream is (a) made of high quality natural ingredients, (b) contains a low volume of air, and (c) is high in butterfat. These three characteristics cause Haagen–Dazs' ice cream to be referred to in the industry as "super premium" or "luxury" ice cream. Haagen–Dazs was the first such high quality ice cream to be distributed throughout the United States.

Two Count is a wholesale distributor of ice cream. It sells to retail outlets located throughout Northern California. It buys products from various manufacturers and resells them to retailers for Two Count's own account.

Double Rainbow manufacturers and sells its own brands of ice cream products, which are of a quality that competes with Haagen–Dazs' ice cream.

Haagen–Dazs' marketing strategy is that its products be distributed only in accordance with its announced marketing policies and procedures. Pursuant to its marketing policies, Haagen–Dazs refuses to sell its products to any distributor who also sells another brand of ice cream that Haagen–Dazs regards as comparable and competitive, based on such considerations as quality, image, packaging, price, and public perception. Haagen–Dazs' policy of distributor loyalty, or exclusive distribution, was announced to its distributors as early as 1981.

Two Count became a distributor of Haagen–Dazs ice cream in Northern California in 1976. The arrangements between Two Count and Haagen–Dazs were oral. No term of duration was stated or agreed upon by implication. For many years, Two Count exercised its best efforts to establish and build sales of Haagen–Dazs products in Northern California. However, in February 1985 Two Count entered into a written distribution agreement with Double Rainbow, providing for Two Count's distribution of Double Rainbow's ice cream. Two Count was aware of Haagen–Dazs' policy that if a distributor represents brands competing with Haagen–Dazs, that would create a conflict of interests unacceptable to Haagen–Dazs. Two Count was aware, prior to agreeing to distribute Double Rainbow's products, of Haagen–Dazs' distribution policies and that Haagen–Dazs was concerned about Two Count's handling competitive lines such as Double Rainbow. The agreement between Two Count and Double Rainbow required Two Count to exert its best efforts in distributing Double Rainbow products, and contained a minimum purchase requirement of one million pints in the years 1985 and following. Two Count did not inform Haagen–Dazs of this arrangement until after Two Count and Double Rainbow executed their written contract. Two Count then advised Haagen–Dazs that it intended to distribute Double Rainbow products, in order to generate additional sales volume for Two Count.

In March 1985, Haagen–Dazs confirmed that Two Count was undertaking distribution of Double Rainbow products. In May 1985 Haagen–Dazs notified Two Count that effective August 1, 1985, the distribution arrangements between Haagen–Dazs and Two Count would end. The distribution

**2.** Haagen–Dazs has filed objections to certain portions of Double Rainbow's and Two Count's factual record. The objections are based on various evidentiary grounds. The court has reviewed each of the objections, and believes that each is well taken. The objections are therefore sustained.

**3.** Haagen–Dazs is a wholly owned subsidiary of The Pillsbury Company. Haagen–Dazs and The Pillsbury Company are collectively referred to here as Haagen–Dazs.

arrangements did end on that day. Haagen–Dazs terminated Two Count because, in Haagen–Dazs' opinion, Two Count's distribution of Double Rainbow created a conflict of interests that impaired Haagen–Dazs' ability to effectively compete, and permitted Double Rainbow to "free ride" on Haagen–Dazs' goodwill, reputation, and distribution.

Haagen–Dazs initially replaced Two Count with another distributor, but that arrangement was terminated in 1986, and Haagen–Dazs now does its own distributing in this area. Two Count has continued to represent Double Rainbow. Two Count also handles Steve's, Perche No!, and Bud's brands of quality ice creams. Two Count's sales have substantially increased since Haagen–Dazs ceased dealing with Two Count and Two Count has devoted itself to the other brands. Double Rainbow has also been able to find distributors in other areas of the United States where it competes with Haagen–Dazs.

Haagen–Dazs makes other assertions of fact which Double Rainbow and Two Count oppose. It is therefore necessary to examine the record of those asserted facts, using the standard defined by the U.S. Supreme Court in *Matsushita*. The inquiry is of course whether there is a genuine issue of material fact to be tried. Most of Haagen–Dazs' record is based upon documents and witness testimony which it obtained from Double Rainbow and Two Count. In addition, Haagen–Dazs has submitted an affidavit of Jerry A. Hausman, a professor of economics, which sets forth his findings from the record that he reviewed. Double Rainbow and Two Count have not submitted an affidavit by an expert witness, and they base their opposition upon testimony and documents obtained in discovery.

### Vertical Restraints and Dealer Terminations

Subsequent to the filing of these cases, several important appellate decisions have been made regarding vertical restraints under the antitrust laws.

The United States Supreme Court recently discussed the issue in *Business Electronics Corp. v. Sharp Electronics Corp.*, —— U.S. ——, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988). The Court reaffirmed its position that alleged vertical restraints which do not constitute price fixing are to be judged under the rule of reason. The Court said that the *per se* illegality rule does not apply to such non-price restraints.[4] The Court also noted that in such a setting *interbrand* competition is the primary concern of the antitrust laws.

This court also has the guidance of the recent Ninth Circuit decision *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir.1987). *Rutman* was a dealer termination case, involving non-price commercial activities, which were alleged to be violations of sections 1 and 2 of the Sherman Act. The court of appeals affirmed the district court's dismissal of the action for failure to state a cause of action. The court of appeals stated that the applicable analysis was under the rule of reason, and not under the *per se* rule. *Id.* at 734. The court also reaffirmed the principle that injury to *competition*, rather than injury to a *competitor*, is indispensable to a claim under section 1. *Id.* The court recognized that harm to a terminated distributor can result from termination, but that harm does not necessarily mean that there has been an antitrust violation. The court also affirmed dismissal of the section 2 allegations, because the defendant did not possess monopoly power in the relevant geographic market, and the plaintiff had not sufficiently alleged a specific intent to monopolize. *Id.* at 736. The analysis of the Ninth Circuit in *Rutman* is particularly relevant to the antitrust claims between Haagen–Dazs and Two Count, and this court is particularly guided by the discussion on pages 734–736 of *Rutman*.

In another recent decision, *OSC Corp. v. Apple Computer Inc.*, 792 F.2d 1464 (9th Cir.1986), the Ninth Circuit again affirmed a summary judgment in a dealer termination case. The termination was challenged under section 1 of the Sherman Act.

---

**4.** Price restraints are not involved in this case.

Summary judgment was granted and was affirmed on the ground that the claimants had not presented a record sufficient to support a reasonable finding in their favor. In regard to the burden of proof, the court stated: "Once allegations of conspiracy made in the complaint are rebutted by probative evidence supporting an alternative interpretation of a defendant's conduct, the plaintiff must come forward with specific factual support of its allegations of conspiracy." *Id.* at 1467. The court reaffirmed that dealer termination cases involve the rule of reason and not the *per se* rule, and that injury to the terminated dealer is not enough to prove injury to competition. *Id.* at 1469.

The Ninth Circuit specifically stated in *OSC* that a manufacturer "is free to impose a non-price restraint on a dealer so long as there is no pernicious economic effect on interbrand competition." *Id.* The court also stated that a manufacturer's attempt to prevent "free riding" on its marketing efforts for the benefit of other lines which the distributor is selling is "both legitimate and lawful" *Id.* at 1468.

In addition, in *A.H. Cox Co. v. Star Machinery Co.*, 653 F.2d 1302, 1306–1307 (9th Cir.1981), the Ninth Circuit affirmed a summary judgment against a distributor, stating that it is widely recognized that in most circumstances dealer terminations or substitutions do not adversely affect competition in a market.

Two Count and Double Rainbow attempt to avoid the application of the above principles by reliance on *Industrial Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336 (9th Cir.1971). From that case they contend that this court should look beyond the termination of the distributorship and view the charges in the context of an attempt to monopolize and a conspiracy. However, as will be discussed below, there is no evidence to support the allegation of conspiracy. In addition, the insufficiency of the monopoly charges are also discussed below.

■ In any event, it is clear from a reading of the Ninth Circuit cases together that the mere discharge of a distributor is not itself a violation of the antitrust laws. Double Rainbow and Two Count must establish more. Basically they must establish an injury to competition. However, they have not done so. They have not made a sufficient showing of a genuine issue of fact regarding an antitrust injury. In fact, the record establishes that there is increasing interbrand competition. Two Count continues to represent Double Rainbow and other manufacturers, and has prospered. Double Rainbow has been able to obtain other distributors nationwide. Haagen–Dazs' market share, on the other hand, has declined in several respects. Two Count and Double Rainbow have not established that competition has suffered because Haagen–Dazs terminated Two Count, whether the relevant geographic market is a nationwide market or the San Francisco Bay Area. Separate distribution has led to increased and successful interbrand competition.

### Monopoly

Two Count and Double Rainbow argue that Haagen–Dazs has a monopoly, or is attempting to monopolize, in violation of section 2 of the Sherman Act and the California Cartwright Act.

■ The elements of a monopolization claim are: (1) possession of monopoly power in the relevant market, (2) willful acquisition or maintenance of that power, and (3) causal "antitrust" injury. *Rutman*, 829 F.2d at 736. The elements of a claim of attempted monopolization are: (1) specific intent to control prices or destroy competition in the relevant market, (2) predatory or anticompetitive conduct directed to accomplishing the unlawful purpose, and (3) a dangerous probability of success. *Id.* The claims of Two Count and Double Rainbow fail here because there is no genuine issue of material fact that Haagen–Dazs has monopoly power in a relevant market, or any intent to control prices or destroy competition in a relevant market, or any dangerous probability of success.

The first factor is the necessity to define the relevant product market. Haagen–

Dazs contends that the relevant product market is all frozen desserts, or at least all ice creams. Two Count and Double Rainbow contend that it is super premium ice creams. While the issue of relevant market is generally a fact question for a jury, *Syufy Enterprises v. American Multi Cinema Inc.*, 783 F.2d 878, 882 (9th Cir. 1986) in this case there is no genuine issue of material fact for the jury in that regard.

The U.S. Supreme Court has said that in analyzing the relevant product market, the appraisal is one of cross-elasticity of demand; that is, the reasonable interchangeability of commodities. *United States v. DuPont & Co.*, 351 U.S. 377, 394–95, 404, 76 S.Ct. 994, 1012, 100 L.Ed. 1264 (1956); *Brown Shoe Co. v. United States*, 370 U.S. 294, 325, 82 S.Ct. 1502, 1523–24, 8 L.Ed.2d 510 (1962). As stated, Haagen–Dazs ice creams are distinguishable, at least for purposes of marketing, by the fact that they have higher butterfat content, lower air volume, and more natural ingredients. Haagen–Dazs' internal documents support the claim that its products have high customer recognition and sales because of those characteristics. However, it is clear from the record that gradations among various qualities of ice cream are not sufficient to establish separate relevant markets for the purposes of determining market power. Courts have repeatedly rejected efforts to define markets by price variances or product quality variances. Such distinctions are economically meaningless where the differences are actually a *spectrum* of price and quality differences. *See, e.g., Brown Shoe*, 370 U.S. at 326, 82 S.Ct. at 1524; *United States v. Jos. Schlitz Brewing Co.*, 253 F.Supp. 129, 145–6 (N.D. Cal.1966), *affm'd* 385 U.S. 37, 87 S.Ct. 240, 17 L.Ed.2d 35 (1967); *Ron Tonkin Grand Turismo v. Fiat*, 637 F.2d 1376, 1379–80 (9th Cir.1981) *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981); *JBL Enterprises v. Jhirmack Enterprises, Inc.*, 509 F.Supp. 357, 371–2 (N.D.Cal.1981); *Beatrice Foods v. FTC*, 540 F.2d 303, 309–310 (7th Cir.1976).

■ That is this case. The record demonstrates that all grades of ice creams compete with one another for customer preference and for space in the retailers' freezers. Double Rainbow and Two Count have not shown that any of the differences among ice cream products, such as physical or price differences, have antitrust significance. They have not presented sufficient facts to create an issue of fact that people who buy so called "super premium" or "luxury" ice creams do not buy others which are lower in the spectrum of price or quality. And to the contrary, Haagen–Dazs has established a record that permits no reasonable inference other than that the relevant market is ice cream generally. There is significant overlap among the various grades and brands. All grades of ice cream compete for both retail shelf space and for consumers' attention. The various adjectives used to describe brands of ice creams do not alone establish separate markets.

Because of this conclusion regarding the product market, the court need not discuss the relevant geographic market extensively. In fact, the parties mention the geographic market only in passing. Since the relevant product market is all ice creams, what evidence there is before this court establishes no meaningful distinctions in result depending upon whether the geographic market is nationwide or the San Francisco Bay Area. That is, Haagen–Dazs has too small a share of either geographic market to approach monopoly power or to establish any dangerous probability of such monopoly power. For example, Haagen–Dazs' statistics indicate that its share of the ice cream market in the San Francisco area is only four to five percent. The parties present no direct statistics on a nationwide market. And Two Count and Double Rainbow's statistics do not demonstrate any monopoly power, or reasonable probability of monopoly power, in any geographic market.[5]

---

5. Double Rainbow's and Two Count's statistics refer to the San Francisco Bay Area, using only super premium ice creams as the product market. Those statistics appear to be flawed, because of their exclusion of some alleged super premium brands. And even those statistics

The record also demonstrates the absence of any power on the part of Haagen–Dazs to exclude competitors. It instead affirmatively demonstrates that competitors are entering the market and obtaining significant market shares. These facts are evidenced in part by the success which Two Count, Double Rainbow, and other manufacturers of alleged super premium ice cream have had in obtaining market shares. As noted from the above authorities, one of the key elements for analysis is the degree of interbrand competition. The record is abundantly clear, beyond any contrary determination which could reasonably be made by a jury, that there is extensive interbrand competition, and that such competition has been increasing.

### Estoppel

■ Double Rainbow and Two Count argue that Haagen–Dazs is collaterally estopped from denying that its exclusive distribution policy is illegal, and from denying that its conduct is coercive. In doing so, they rely upon a decision of the United States District Court for the District of Massachusetts, *Ben and Jerry's Homemade v. Haagen–Dazs*, 693 F.Supp. 1256, (D.Mass.1987). However, that decision does not have the collateral estoppel effect that Two Count and Double Rainbow seek. First, that decision was made on the application by that plaintiff for a preliminary injunction. It was not a final adjudication which is entitled to collateral estoppel effect. *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1350–51 (9th Cir.1982). In addition, the decision was based primarily, if not entirely, upon the breach of a written settlement agreement between the plaintiff there and Haagen–Dazs. It was not an adjudication of alleged violations of the antitrust laws. The settlement agreement at issue there is not at issue in this case.

### Conspiracy

Two Count and Double Rainbow also argue that there was a conspiracy between Haagen–Dazs and other parties, and that the existence of a conspiracy is a defense to Haagen–Dazs' summary judgment motion.

■ However, the record does not establish any genuine issue of material fact on the existence of any conspiracy. One argument is that there was a conspiracy between Haagen–Dazs and its parent Pillsbury. However, an alleged conspiracy between a corporate parent and its wholly owned subsidiary is legally insufficient. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). In addition, Double Rainbow and Two Count have apparently conceded in their briefs that there is insufficient evidence to establish any conspiracy between Haagen–Dazs and any other manufacturer or distributor to keep Double Rainbow or Two Count out of the market. Two Count and Double Rainbow have simply not come forward with a specific factual showing to support their allegations of conspiracy, as required by the Ninth Circuit's holding in *OSC.* 792 F.2d at 1467.

Based upon the relevant authorities, and upon the record in this case, which establishes either undisputed facts or facts as to which there is no genuine issue, the court concludes that summary judgment should be granted (a) in favor of Haagen–Dazs and against Two Count on Two Count's two antitrust claims, and against Double Rainbow on Double Rainbow's three antitrust claims, (b) and in favor of Haagen–Dazs against Two Count and Double Rainbow on the first cause of action in C–85–6553.

### Common Law Claims

■ Two Count has also alleged common law claims. One is an alleged breach of the distribution agreement between Haagen–Dazs and Two Count. However, that contract was oral, contained no term of duration, and was terminable at will. Two Count argues that the agreement was

show that Haagen–Dazs' share of the alleged super premium market has dropped from 1984 through 1987.

to last in perpetuity because Two Count was "assured that it would grow with Haagen–Dazs." But that is legally insufficient. *See Alpha Distrib. Co. v. Jack Daniel Distillery,* 454 F.2d 442, 447–8 (9th Cir. 1972) *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974); *Connelly v. Venus Foods, Inc.,* 174 Cal.App.2d 582, 585–6, 345 P.2d 117 (1959). Even if the agreement were interpreted as being more than "at will," and required good cause for termination, the record establishes that there was good cause. Two Count's taking on competitive lines of ice cream was good cause. Two Count's obligation was at least to use its best efforts on behalf of Haagen–Dazs, and when Two Count agreed to also use its best efforts on behalf of competitor Double Rainbow, Haagen–Dazs was justified in terminating the distribution agreement. There is no doubt that Haagen–Dazs gave reasonable notice to Two Count of the termination, and the court does not understand Two Count to be complaining about the method or reasonableness of the notice of termination.

Two Count's other state law allegations are unfair business practices, interference with prospective advantages, interference with contractual relationships, and breach of the covenant of good faith. They are based upon Two Count's allegation that Haagen–Dazs somehow interfered with Two Count's relationships with its customers and suppliers. However, discovery has not substantiated those allegations. There is not sufficient evidence in the record to support an allegation of such interference. And as stated, Two Count has increased its number of brands, its customers and its revenues.

Double Rainbow also makes common law allegations of interference with prospective advantages and interference with contractual relationships. Again, however, there is not sufficient evidence to support those allegations.[6] The undisputed record shows that although Haagen–Dazs is in competition with Double Rainbow, it has not unlawfully interfered with Double Rainbow's contractual relationships or its prospective business advantages. There is no material evidence that the contract between Double Rainbow and Two Count has been interfered with by Haagen–Dazs. Nor is there any evidence of interference with any contract that Double Rainbow had with any other customers. Double Rainbow's general argument of possible inference with *potential* distributors, retail customers or franchisees is not legally sufficient. Such general expectations do not constitute economic relationships sufficient for protection. *Blank v. Kirwan,* 39 Cal.3d 311, 330, 216 Cal.Rptr. 718, 703 P.2d 58 (1985); *Buckaloo v. Johnson,* 14 Cal.3d 815, 828, 122 Cal.Rptr. 745, 537 P.2d 865 (1975).

### Conclusion

In summary, Haagen–Dazs terminated Two Count because Haagen–Dazs has a marketing policy of requiring exclusive distribution, which Two Count violated by agreeing to distribute the ice creams of Double Rainbow, as well as other brands that compete with Haagen–Dazs. Haagen–Dazs was legally entitled to terminate Two Count. Double Rainbow and Two Count have not provided sufficient evidence from which a reasonable trier of fact could find any violation of Section 1 of the Sherman Act, Section 2 of the Sherman Act, or the California Cartwright Act, or could find in favor of Double Rainbow and Two Count on their state law claims.

Competition in the ice cream market is flourishing, and interbrand competition is intense. Antitrust lawsuits are no substitute for such true competition. The public interest is protected by such competition, and antitrust suits are only an adjunct to promoting that public interest in cases where competition has been improperly curtailed. When there is, as here, real and intense competition, antitrust suits are simply not for the purpose of protecting a distributor's or a competitor's economic desires.

---

**6.** From the briefs in the summary judgment motions, the court does not understand Double Rainbow to argue that it has shown sufficient facts to contest Haagen–Dazs' motion on these common law claims.

IT IS THEREFORE ORDERED as follows:

(1) The motion for summary judgment by Double Rainbow in action C–86–0853 is denied.

(2) The motion for summary judgment by Two Count in action C–87–2471 is denied.

(3) The motion of Haagen–Dazs for summary judgment is granted as follows:

(a) In C–86–0853, in favor of Haagen–Dazs and against Double Rainbow on all causes of action.

(b) In C–87–2471, in favor of Haagen–Dazs and against Two Count on all causes of action.

(c) In C–85–6553, in favor of Haagen–Dazs and against Double Rainbow and Two Count on the first cause of action.

(4) The court understands that there is a second cause of action in C–85–6553 by Haagen–Dazs alleging unfair competition. But the court does not interpret Haagen–Dazs' motion for summary judgment to address that cause of action. If Haagen–Dazs wishes to proceed with that cause of action, it should advise the court and the parties, and a status conference will be scheduled to set dates for the prosecution of that cause of action. If, in view of the above rulings, Haagen–Dazs wishes to abandon that cause of action, it should file with this court and serve on the parties a proposed form of judgment which is consistent with this opinion and which states that Haagen–Dazs is dismissing the second cause of action of C–85–6553.