8 F.3d 29
 146 L.R.R.M. (BNA) 2960
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PETROCHEM INSULATION, INC., Plaintiff-Appellant,
v.
UNITED ASSOCIATION OF JOURNEYMEN & APPRENTICES OF THE
PLUMBING & PIPE FITTING INDUSTRY OF THE UNITED STATES &
CANADA, LOCAL UNION NO. 38, AFL-CIO; Thomas R. Adams;
Adams & Broadwell; Thomas J. Hunter; Northern California
and Northern Nevada Pipe Trades Council, District Council
51, et al.; Local Unions 62, 159, 228, 246, 342, 343, 350,
365, 437, 444, 447, 460, 471, 483, 492, 503 and 662,
Defendants-Appellees.
International Brotherhood of Electrical Workers, AFL-CIO
Local 302, amicus, Amicus.
 No. 92-15511.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 12, 1993.
Decided Sept. 24, 1993.
 
 Before: KOZINSKI, THOMPSON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 A. Antitrust Section 1 Claim
 
 2
 We have held that failure to allege injury to competition is a proper ground for dismissing a § 1 claim. Alliance Shippers, Inc. v. Southern Pac. Transp. Co., 858 F.2d 567, 570 (9th Cir.1988). "Indispensable to any section 1 claim is an allegation that competition has been injured rather than merely competitors." Rutman Wine Co. v. E & J Gallo Winery, 829 F.2d 729, 734 (9th Cir.1987) (emphasis in original); see also Les Shockley Racing, Inc. v. National Hot Rod Ass'n, 884 F.2d 504, 507-08 (9th Cir.1989) (affirming 12(b)(6) dismissal for failure to state a § 1 antitrust claim because plaintiff failed to allege an unreasonable restraint of or injury to competition).
 
 
 3
 Petrochem has failed to allege injury to competition. Rather, it merely alleges injury to its own business, either because it was denied the opportunity to bid on certain projects, or because it was not awarded certain contracts. An allegation of injury to its own business interests alone is not enough to establish injury to the market as a whole. See Les Shockley, 884 F.2d at 508.
 
 
 4
 Petrochem marshals three arguments in response. First, it asserts that if four open shop contractors are eliminated, there is a substantial numerical reduction in competition. We rejected a similar argument in Les Shockley, reasoning that although removal of one or more competitors from a market necessarily has an effect on competitive conditions within that market, it is only when such an agreement or other arrangement "becomes unreasonably disruptive of market functions such as price setting, resource allocation, market entry, or output designation" that there may be a potential Sherman Act violation. 884 F.2d at 508. Petrochem does not allege detrimental competitive effects. Mere injury to its own position as a competitor is insufficient to state an antitrust claim. See id.; see also Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc., 710 F.2d 1366, 1373 (9th Cir.1983) ("it is injury to the market, not to individual firms, that is significant") (internal quotations omitted).
 
 
 5
 Second, Petrochem asserts that this deficiency is overcome because the complaint sufficiently alleges anticompetitive intent. Although intent to harm competition in the relevant market may state a claim for relief under certain circumstances, conclusory allegations are insufficient in the absence of anticompetitive conduct from which such specific intent may be inferred. Rutman Wine Co., 829 F.2d at 735. Petrochem points to the allegations of sham petitioning contained in the complaint and Exhibit 1 as proof of anticompetitive intent. However, the Noerr-Pennington doctrine shields legitimate efforts to use the adjudicative (or the legislative) process to achieve certain goals from antitrust liability regardless of anticompetitive intent or purpose. See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 113 S.Ct. 1920, 1927 (1993). Moreover, Petrochem's sham petitioning claim alleges only unilateral action, and therefore cannot form the basis of its § 1 antitrust claim. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 634 (9th Cir.1987) ("Independent action does not fall within the ambit of § 1 of the Sherman Act."). Section 2 of the Sherman Act encompasses unilateral action. Id.
 
 
 6
 Third, despite the pleading deficiencies noted above, Petrochem contends that the district court erred in requiring "an impossible burden of factual specificity" and that it should be allowed to obtain such facts through discovery. Petrochem is mistaken. We have previously stated that a pleader may not evade the § 1 antitrust elements "by merely alleging a bare legal conclusion; if the facts do not at least outline or adumbrate a violation of the Sherman Act, the plaintiffs will get nowhere merely by dressing them up in the language of antitrust." Rutman Wine Co., 829 F.2d at 736 (internal quotations omitted) (affirming 12(b)(6) dismissal because complaint failed to allege injury to competition); see also Les Shockley, 884 F.2d at 507-08 (same).
 
 
 7
 Petrochem cites Beltz Travel Serv., Inc. v. International Air Transp. Ass'n, 620 F.2d 1360, 1366 (9th Cir.1980), to support its proposition that discovery may be the only method by which the facts underlying an alleged agreement would be revealed. Beltz does not relieve Petrochem of its burden to present factual allegations. In Beltz, the complaint alleged numerous acts of the defendants which were in furtherance of the conspiracy and it established the three § 1 prerequisites necessary to state a § 1 claim. Id. at 1365. The complaint and affidavit in Beltz also set forth all the facts regarding the objectives and accomplishments of the conspiracy. Id. at 1365-66.
 
 
 8
 Petrochem also complains that it should not be "punished" because it was unable to obtain written agreements as to each and every conspiracy and that without such agreements it could not outline the specific details of those agreements. It is true that the district court's order granting leave to amend stated that Petrochem was to identify the agreements, parties, and terms to the extent possible as well as attach the agreements, if they were in Petrochem's possession. The complaint was not dismissed because the agreements were not attached. Rather, it was dismissed because there was insufficient factual support to indicate that such agreements did in fact exist.
 
 B. Antitrust Section 2 Claim
 
 9
 Petrochem's complaint fails to allege that the defendants possess monopoly power in the relevant market, one of three prerequisites for establishing a monopolization claim under § 2. See Rutman Wine Co., 829 F.2d at 736. Petrochem defined the relevant market as a pipe and insulation subcontracting market located in Northern and Central California. Petrochem has failed to allege that the defendants possess monopoly power in that market. The defendants' alleged activities under Petrochem's § 2 claim are unilateral. Because the defendants do not possess a share of the relevant market, their actions alone cannot achieve monopoly power.
 
 
 10
 Similarly, Petrochem has failed to allege the requisite elements of an attempted monopolization claim. See id.
 
 C. Alleged RICO Violation[1]
 
 11
 Because Petrochem has failed to establish a violation of the LMRA, § 186, there is no predicate act upon which to base a RICO claim. Section 186 prohibits an employer from paying money to a union. See 29 U.S.C. § 186; Associated Builders & Contractors v. Carpenters Vacation & Holiday Trust Fund for Northern Ca. (ABC), 700 F.2d 1269, 1274 (9th Cir.), cert. denied, 464 U.S. 825 (1983). A violation of § 186 serves as a predicate act under the RICO statute, 18 U.S.C. § 1961(1)(C). However, the LMRA provides an exception to § 186 which "permits an employer to transfer money to a union if: (1) the money is in payment of membership dues; (2) the employer has received a valid written authorization from the employee; and (3) the money is deducted from wages." ABC, 700 F.2d at 1274 (emphasis in original).
 
 
 12
 Petrochem's complaint alleges facts which establish the first and third elements of the exception, i.e., that BIDS is funded with money in payment of membership dues and that the money is deducted from wages:
 
 
 13
 BIDS ... is funded by money taken out of membership dues and transmitted to Defendants by employers pursuant to a dues check-off procedure .... [BIDS is] a sales program, funded by dues, funneled through District Council 51, and paid to the Council by union contractors payroll deductions.
 
 
 14
 Further, Petrochem does not allege that the employers did not receive valid written authorizations from employees. Petrochem has failed to allege a predicate act upon which to base its RICO claim.
 
 
 15
 Petrochem contends that the funds transferred to the union for the BIDS program are not "membership dues" because the union does not use those dues for permissible purposes, such as organizing activities, contract bargaining or working condition and wage issues. Petrochem asserts that BIDS has two improper uses: (1) collection of project data in order to track projects in the permit stage; and (2) circulation to union contractors information as to those construction projects.
 
 
 16
 We rejected a similar argument in ABC. In that case, ABC argued that the union used part of the revenue from "supplemental dues" for impermissible political purposes, i.e., to hire organizers to combat the open shop movement in the construction industry and to discourage employers from going non-union. ABC, 700 F.2d at 1275. ABC contended that because membership dues were used for improper political purposes, they were "not in payment of membership dues," and thus there was a LMRA violation. Id. We disagreed, holding that the First and Fourteenth Amendments do not proscribe a union's expenditure of dues revenue for political purposes unless the employees who pay those dues affirmatively object to that union's use of their dues. Id. ("Money spent on organizing to eliminate competition from non-union employers is germane to collective bargaining and therefore is not a 'political' expenditure for purposes of first amendment analysis.").
 
 
 17
 Similarly, the dues in this case are used for organizing to eliminate competition from non-union employers. The two uses Petrochem challenges, collecting and circulating project data, help the union shops organize and compete for those projects. Hence, the district court properly dismissed Petrochem's RICO claim because absent the LMRA violation, there is no predicate act upon which to base this claim.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In an order filed August 6, 1993, we dismissed Petrochem's RICO extortion claim because Petrochem waived the issue when it failed to include that claim in its amended complaint. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir.1987)