HEWLETT–PACKARD COMPANY

v.

ARCH ASSOCIATES CORPORATION, et al.

No. 95–CV–1590.

United States District Court, E.D. Pennsylvania.

Dec. 7, 1995.

266

which would entitle it to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

## FACTUAL BACKGROUND

According to Arch's Counterclaim, HP produces a broad range of electronic instruments and systems for measurement, analysis and computation, including personal printers for computers. The sale and distribution of HP's printers is the subject matter of this litigation. Arch, which was an authorized dealer of HP printers from 1985 to 1991, alleges that HP sells its printers to two types of resellers: aggregators and dealers. Aggregators are companies that purchase directly from HP and resell to authorized dealers, other resellers and consumers. Dealers purchase either from HP or from aggregators and resell to consumers, other dealers or other resellers. It is evident, therefore, that aggregators and dealers compete directly in several markets.

In 1989, HP allegedly determined to modify its distribution system to increase sales through aggregators and decrease sales through dealers. As part of that change, HP instituted a promotional program known as the Co-op Advertising Program. Through this program, aggregators and dealers are able to receive credits (Co-op Credits) to their promotional account with HP if they submit supporting documentation for their claims.

According to Arch, however, HP determined to secretly assist aggregators by giving them, and not dealers, cash rebates without the need for supporting documentation for their claims. In addition, HP has also restricted the geographic territory in which dealers can sell and has raised its minimum buying levels to force small dealers to buy from aggregators rather than HP directly. Arch charges that these and other acts tend to destroy competition.

In 1990, HP audited Arch and obtained its customer lists. In 1991, HP deauthorized Arch and contacted Arch's customers to tell

them not to deal with Arch anymore. Further, HP engaged in other conduct directed at harming Arch, for example, telling other dealers that Arch had submitted Co-op Credit claims for two fictitious customers.

## DISCUSSION

### 1. SECTION ONE OF THE SHERMAN ACT

■ Section 1 of the Sherman Act "prohibits every contract, combination or conspiracy in restraint of trade." *Fuchs Sugars & Syrups v. Amstar Corp.,* 602 F.2d 1025, 1029 (6th Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979); *Alvord–Polk, Inc. v. F. Schumacher & Co.,* 37 F.3d 996, 999 (3d Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995). Accordingly, to state a § 1 claim, a plaintiff must plead that the defendant contracted, combined or conspired with another entity or entities, that the concerted action produced adverse anti-competitive effects within the relevant product and geographic markets and that the plaintiff suffered antitrust injury as the proximate result of the concerted action. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1541 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Martin B. Glauser Dodge Co. v. Chrysler Corp.,* 570 F.2d 72, 81 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978). HP contends that Arch has not adequately pleaded any of these elements.

#### A. Concerted Activity

■ HP's first objection to Arch's § 1 claim is that Arch does not adequately allege concerted activity. HP points out that throughout Arch's pleading HP is referred to as acting secretly and alone, with the exception of a smattering of references to HP acting in concert with certain of its authorized distribution network. HP asserts that Arch cannot state a claim with unnamed conspirators and conclusory statements.[1]

---

1. "Telling evidence" of this fact, according to HP, is that it is the only defendant and that Arch has not joined indispensable parties to the antitrust claims. As Arch points out, there is no requirement that the victim of a conspiracy must

sue each co-conspirator. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1052–53 (9th Cir.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61, 459 U.S. 825, 103 S.Ct. 58, 74 L.Ed.2d 61 (1982).

In contrast, Arch contends that it has adequately pleaded concerted action because it pleads that "HP, in concert with certain members of its authorized distribution network, ... unlawfully conspired and combined in an effort to expand its monopoly and to further restrain trade." Am. Counterclaim at ¶¶ 354, 355.

We find that Arch's pleading is sufficient. The pleading alleges that HP combined with certain members of its distribution network. This network is a finite group whose members can be determined through discovery. Further, the subject matter of the alleged contracts is sufficiently identified by the pleading. *Cf. Garshman v. Universal Resources Holding Inc.*, 824 F.2d 223, 230 (3d Cir.1987) (complaint dismissed when neither co-conspirators, contracts nor unlawful acts were specified); *but see American Health Sys. v. Crozer–Keystone Health Sys.*, 93–0543, 1993 Westlaw 533102 at *2 (E.D.Pa. Dec. 21, 1993) (although co-conspirators unnamed, pleading specific enough to permit a responsive pleading).

HP's second objection is that Arch has failed to allege that HP's purported actions are contrary to HP's interests absent a conspiracy. This, it asserts, is essential to a § 1 claim. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). HP alleges that its conduct, as described in Arch's Counterclaim, is fully consistent with its own self-interest and therefore, no inference of a conspiracy can be found.

In fact, HP argues that Arch's own pleading demonstrates that it acted legally. HP contends that manufacturers are free to distribute their products in any legal manner and that a mere change in distribution systems does not state an antitrust claim. *H.J., Inc. v. ITT*, 867 F.2d 1531, 1544–45 (8th Cir.), *reh'g denied*, 876 F.2d 59 (1989); *Fuchs*, 602 F.2d at 1030. This is so even if a manufacturer threatens a distributor with termination if it does not cooperate. *Id.; International Logistics Group v. Chrysler Corp.*, 884 F.2d 904, 907 (6th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990). A manufacturer has the right to deal or not deal with whomever the manufacturer chooses. *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 760, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984); *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919). HP professes that because it can choose with whom to deal, it cannot have violated antitrust laws by deauthorizing Arch.

In turn, Arch declares that HP's arguments are more suited to a motion for summary judgment, not one to dismiss. It argues that evidence as to self-interest is only relevant when addressing the merits of a claim. Further, it asserts, self-interest is only relevant in a "conscious parallelism" case, which this is not. *Schoenkopf v. Brown & Williamson Tobacco Corp.*, 637 F.2d 205, 207–08 (3d Cir.1980).

While Arch agrees that a manufacturer generally can wholly abandon one distribution system in favor of another, can deauthorize dealers at will and take other similar actions, it insists that a manufacturer cannot take those actions if in addition, "the manufacturer attempts to exact some collateral anti-competitive advantage." *Monsanto*, 465 U.S. at 760, 104 S.Ct. at 1469; *Fuchs*, 602 F.2d at 1030. Arch maintains that its Counterclaim sufficiently alleges that HP acted in concert with others to coerce its resellers from selling outside of designated markets and threatened Arch with loss of reseller status for trying to sell outside its assigned geographic territory. This, it advances, is sufficient to show the 'something more' required.

We find that Arch's Counterclaim sufficiently pleads concerted activity. Under Rule 8, Arch need not plead the facts supporting its allegation but simply state a claim. Further, Arch's pleadings, though bare, do allege the 'something more' required to state a claim under § 1 even though they do not allege the co-conspirators' role in that 'something more.' This, however, can be rectified during discovery. *See e.g.* Am. Counterclaim at ¶¶ 354–56. *Albrecht v. Herald Co.*, 390 U.S. 145, 150, 88 S.Ct. 869, 871–72, 19 L.Ed.2d 998 (1968) (§ 1 violation when knowing and active participation between manufacturer and dealer to coerce third party's compliance with anti-competitive activi-

ty); *Bowen v. New York News,* 522 F.2d 1242, 1254 (2d Cir.1975), *cert. denied,* 425 U.S. 936, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976) (§ 1 violated when manufacturer attempted to cut off deauthorized dealers' independent sources of product supply and eliminated them as competitors with authorized dealers).

*B. Relevant Geographic and Product Markets*

■ HP asks this Court to determine that Arch has not adequately pleaded the geographic and product markets involved in this litigation. First, it contends that no geographic market has been pleaded at all. Arch objects to this assertion and points to paragraphs 351 and 355(c) wherein the United States is named as the relevant geographic market. We find that this allegation is sufficient.

Second, HP asserts that as a matter of law, a relevant product market cannot be limited to distribution of a manufacturer's own products. *United States v. E.I. DuPont de Nemours & Co.,* 351 U.S. 377, 393, 76 S.Ct. 994, 1006, 100 L.Ed. 1264 (1956); *International Logistics,* 884 F.2d at 908. This is especially so, HP declares, when there are alternative products available in the marketplace. *Id.* Because Arch only makes allegations regarding HP printers and because other computer printer manufacturers exist, HP contends that Arch's limited claims do not state a relevant product market.

Arch first contends that the determination of the relevant product market is a question of fact. Therefore, it asserts, HP's objections are premature. Second, it asserts that as a matter of law a single product can be the relevant product market so long as that product has total market dominance, as opposed to a mere monopoly over its own brand. *Eastman Kodak Co. v. Image Technical Servs.,* 504 U.S. 451, 481, 112 S.Ct. 2072, 2089–90, 119 L.Ed.2d 265 (1992); *Domed Stadium Hotel v. Holiday Inns,* 732 F.2d 480, 488–89 n. 9 (5th Cir.1984); *Bushie v. Stenocord Corp.,* 460 F.2d 116, 121 (9th Cir.1972).

■ Here, the Counterclaim alleges that HP has a monopoly and controls approximately 75% of computer printer sales in the United States. We are reluctant to make a ruling of law on the percentage of control that constitutes total market dominance under *Eastman Kodak.* However, Arch alleges that HP does totally dominate the market. This is a motion to dismiss and we read the pleadings in the non-movant's favor. Accordingly, we find that Arch has adequately pleaded a relevant market and will permit this theory to go to discovery.

*C. Antitrust Injury*

HP's final objection to Arch's § 1 claim is that Arch has failed to allege an antitrust injury. Rather, HP contends, Arch has simply asserted injury to it, and not to competition in general. *Brunswick Corp. v. Pueblo Bowl–O–Mat,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). According to HP, Arch makes two allegations of injury. One, that it was deauthorized as a dealer and two, that it lost customers and market share because the cash rebates given to aggregators gave them an unfair advantage. HP argues that neither shows an antitrust injury.

First, HP argues that even if Arch's deauthorization was an antitrust injury, Arch has not shown any causal connection between that decision and any anti-competitive acts by HP. Rather, the Counterclaim alleges that HP determined to deauthorize Arch and other dealers in order to boost sales for its aggregators and to this end, raised its buying thresholds to force small dealers to buy from aggregators. Also, HP allegedly objected to Arch's sales to retail discounters. Nowhere, HP contends, does Arch relate its deauthorization to HP's buying thresholds. Nor can Arch make such a connection, because Arch's authorization contract was renewed three times after the buying thresholds were raised.

Second, HP argues that the aggregators' cash benefits do not result in antitrust injuries. If, HP argues, the aggregators used the cash rebates to improve their overall profits and not to lower their resale prices, then there would be no effect on the consumer or market. Even if the aggregators used

the rebates to lower their resale prices, this would not create antitrust injury, because, after all, lower prices benefit consumers.[2] For these reasons, HP contends that Arch has not alleged antitrust injury.

In return, Arch asserts that HP has ignored much of its Counterclaim and that it has in fact alleged antitrust injury and the causally connected anti-competitive results. Arch alleges anti-competitive acts such as requiring consumer purchases of HP printers through HP-designated resellers, which leads to restrictions of consumer choice and artificial price supports of HP computers, as well as the act of restricting designated resellers from selling outside HP-determined geographic territories with the result of eliminated price competition. Am. Counterclaim at ¶ 355. Further, Arch alleges that the cash rebates were given to the aggregators in order to divert sales from dealers, resulting in increased consumer prices. *Id.* at ¶¶ 314, 371.

 We find that Arch has sufficiently pleaded antitrust injury in the marketplace through these allegations.[3] Further, we find that Arch's allegations sufficiently plead the required causal connection between HP's alleged antitrust actions and resulting antitrust injury. For these reasons and the ones given above, we find that Arch has sufficiently pleaded a claim for which relief can be granted under § 1 of the Sherman Act. Accordingly, we deny this portion of HP's motion to dismiss.

### 2. SECTION TWO OF THE SHERMAN ACT

 Section 2 of the Sherman Act is violated when a party monopolizes or attempts to monopolize a particular market. 15 U.S.C. § 2. To state a claim, a party must allege one of two things. Either that the defendant possesses monopoly power in the relevant market as the result of willful acqui-

sition and not mere growth or development as a consequence of a superior product, business acumen or historic accident. Or that the defendant is attempting to monopolize by engaging in predatory or anti-competitive acts with a specific intent to monopolize and a dangerous probability of achieving that goal. *United States v. Grinnell,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Spectrum Sports v. McQuillan,* 506 U.S. 447, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993).

HP seeks to dismiss this Counterclaim on the grounds that Arch has failed to allege (1) a relevant product or geographic market, (2) antitrust injury or (3) unlawful conduct.

### A. Relevant Geographic and Product Markets and Antitrust Injury

 HP's arguments with respect to the relevant markets and antitrust injury and Arch's responses to those arguments are the same as those made for the § 1 claim. For the same reasons given above, we find that Arch has adequately pleaded both geographic and product markets as well as antitrust injury.

### B. Unlawful Conduct

HP insists that Arch has not pleaded unlawful conduct, i.e., any predatory, exclusionary or anti-competitive actions by it. Conduct is an essential element of a § 2 claim. *Walker v. U–Haul Co.,* 734 F.2d 1068, 1074 (5th Cir.1984) ("mere possession of monopoly power, absent evidence that such power was willfully acquired or maintained, does not violate section 2"). As above, HP contends that it is free to restructure its distribution system and deal with whom it chooses. For this reason, it argues, its actions are not unlawful.

 Second, HP argues that Arch's leveraged monopoly theory[4] fails because

---

2. We agree with HP that there are no allegations that any party has engaged in predatory pricing.

3. So finding, we recognize the validity of many of HP's arguments; many of Arch's allegations can be read to defeat the very claims they attempt to plead. This is, however, a motion to dismiss and we must construe Arch's pleadings

in its favor. For that reason, we only rely on the allegations that can be read to support its claims.

4. The leveraged monopoly theory precludes the "use of monopoly power attained in one market to gain a competitive advantage in another." *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 276 (2d Cir.1979), *cert. denied,* 444

Arch has failed to allege facts to support the allegations. Moreover, HP contends that any leveraged monopoly theory must fail because HP would have no motive to monopolize the downstream distribution market. Finally, HP asserts that the Third Circuit does not recognize the leveraged monopoly theory. *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 205 (3d Cir.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993).

In turn, Arch first asserts that it has alleged unlawful, anti-competitive conduct in connection with the change in the distribution system and with its deauthorization. For example, in paragraphs 306 and 307, Arch alleges that the new distribution system resulted in knowing, different treatment of aggregators and dealers and that this different treatment tends to destroy competition.

Second, with respect to its monopoly leveraging theory, Arch maintains that it has adequately pleaded such a claim by alleging that HP attempted to monopolize the downstream market for distribution of HP computer printers by leveraging its existing monopoly power in the computer printer manufacturing market. Am. Counterclaim at ¶¶ 350–60. Third, Arch asserts that HP attempted to monopolize the distribution market in order to dictate prices.

Finally, Arch contends that *Fineman* does not reject the leveraged monopoly theory, but simply limits the *Berkey* enunciation of it. In fact, Arch argues, *Fineman* specifically recognized the leveraging theory, simply holding "that in order to prevail upon a theory of monopoly leveraging, a plaintiff must prove threatened or actual monopoly in the leveraged market." 980 F.2d at 206. Hence, because Arch has alleged an actual monopoly of the downstream market, *Fineman* is no bar to its claim. *Advo, Inc. v. Philadelphia Newspapers, Inc.,* 854 F.Supp. 367, 377 (E.D.Pa.1994), *aff'd,* 51 F.3d 1191 (3d Cir.1995).

 We find that Arch's allegations plead all the necessary elements of anti-competitive

conduct and a leveraged monopoly claim; that HP had a monopoly in one area, used unlawful acts to leverage that monopoly into another area, and has achieved that second monopoly. *Fineman,* 980 F.2d at 206. If we assume, as we did above, that HP can have a monopoly of its own product, then HP could use that monopoly to leverage a second monopoly in the distribution of that product. If proven, this could comprise a § 2 violation. *Schrob,* 948 F.2d at 1405 (accept as true all allegations in pleading and give plaintiff benefit of every favorable inference). At this early stage of the proceedings it is appropriate to permit discovery to continue rather than summarily foreclose a potentially viable cause of action. For this reason, we deny HP's motion to dismiss the § 2 claim.

### 3. ROBINSON–PATMAN ACT

The Robinson–Patman Act precludes discrimination in price, services or facilities by any person engaged in commerce. 15 U.S.C. § 13 (1973). HP seeks to dismiss the part of Arch's second Counterclaim that pleads a cause of action under § 13(e) of that Act. Section 13(e) makes it unlawful for any person engaged in commerce to furnish services or facilities connected with the processing, handling, sale, or offering for sale of a commodity to one purchaser without making those services or facilities available to all purchasers on proportionally equal terms. HP asks this Court to dismiss the § 13(e) claim on the grounds that the claim fails to allege antitrust injury or allege that HP discriminated between Arch and anyone in competition with Arch.

First, HP disputes whether the cash rebates supplied to the aggregators is a service or facility within the meaning of § 13(e). It asserts that cash "is not a 'service or facility' by any interpretation or definition of those terms." *Bouldis v. United States Suzuki Motor Corp.,* 711 F.2d 1319, 1327–29 (6th Cir.1983).

Arch declares that cash is not the item it identifies as a facility or service. It points out that its Counterclaim alleges that HP

U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). According to the Third Circuit, by 1992 only the Sixth Circuit had fully adopted this theory. *Fineman v. Armstrong World Indus.,* 980

F.2d 171, 205 (3d Cir.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993).

discriminated with respect to "cash rebates, services and facilities." Am. Counterclaim at ¶ 355(d). The services and facilities are later identified as including information and support, including marketing support, and specifically, the aggregators' Co-op Advertising Program. *Id.* at ¶ 357; *FTC v. Fred Meyer, Inc.,* 390 U.S. 341, 351–52, 88 S.Ct. 904, 909–10, 19 L.Ed.2d 1222 (1968).

Second, HP maintains that Arch only alleges that the aggregators used the cash rebates to lower resale prices to consumers. This, HP asserts, is not an antitrust injury. In support of this argument, it cites *Rutman Wine v. E & J Gallo Winery,* 829 F.2d 729, 737 (9th Cir.1987). There, according to HP, the Ninth Circuit held that a plaintiff's conclusory statements that discrimination injured its ability to compete did not plead antitrust injury because antitrust injury does not arise solely from discrimination. *Id.*

Again, Arch charges that HP ignores allegations in its Counterclaim. It points to the arguments it made with respect to the Sherman Act claims to show that it has adequately alleged antitrust injury. Further, Arch controverts HP's quote from *Rutman Wine* for omitting relevant language. In fact, the Ninth Circuit held that the plaintiff's claim was conclusory because plaintiff "fail[ed] to allege anyone with whom it is unable to compete." 829 F.2d at 737. Arch asserts that it has plainly named the aggregators as those with whom it cannot compete and thereby pleads actual antitrust injury. Am. Counterclaim at ¶¶ 357, 370–71.

Finally, HP contends that Arch has not alleged that it was actually injured, but rather, only that HP's actions were "aimed at" injuring Arch. In response, Arch points to paragraph 313, where it alleges that it lost customers and market share as a result of the unfair advantage given to the aggregators. In turn, this allegedly raised consumer prices. Am. Counterclaim at ¶ 314.

▆▆▆▆ We find that Arch has adequately pleaded a Robinson–Patman Act claim. We find that Arch's claim can be analogized to *FTC v. Simplicity Pattern Co.,* 360 U.S. 55, 60, 79 S.Ct. 1005, 1009, 3 L.Ed.2d 1079 (1959), where the defendant gave some retailers free shipping, display cases, product cata-

logues and the like, whereas other retailers were required to pay for those services and facilities. The Supreme Court held that this disparate treatment violated § 13(e). Here, we find that Arch has adequately identified services and facilities that were allegedly provided unequally to aggregators and dealers. In addition, we find, as we did above, that Arch has adequately alleged antitrust injury to the market as well as to itself. For these reasons, we find that Arch has stated a claim under § 13(e) and will deny HP's motion to dismiss this Counterclaim.

## 4. STATE CLAIMS

HP seeks to dismiss three of the state claims alleged in Arch's Counterclaim. These claims are negligent misrepresentation and/or intentional misrepresentation and unjust enrichment.

### A. Misrepresentation

HP encourages this Court to dismiss the misrepresentation claims on two grounds; first, that the alleged intentional misrepresentation is not pleaded with sufficient particularity under Rule 9(b) and second, that Arch has not alleged damages proximately resulting from the alleged misrepresentations. Because the second argument affects both claims, we address it first.

HP contends that in Pennsylvania, the measure of damages in a fraud case is the actual damage sustained. *Delahanty v. First Pa. Bank,* 318 Pa.Super. 90, 117, 464 A.2d 1243, 1257 (1983); *Killian v. McCulloch,* 850 F.Supp. 1239, 1252 (E.D.Pa.1994). HP asserts that Arch has failed to allege any connection between an alleged misrepresentation and an injury suffered by Arch. According to Arch's Counterclaim, HP's alleged misrepresentation caused Arch's

> restricted ability to supply HP printers to its customers at a price comparable to that of aggregators buying at the same volume level. Arch has also been damaged by the loss of business from customers to whom these representations were made and by being unable to purchase HP printers because other dealers were afraid to sell to Arch.

Am. Counterclaim at ¶ 381. HP maintains that none of these allegations allege injury to Arch. First, Arch cannot sue for misrepresentations made to its customers because only the person who relied on the misrepresentation has a cause of action. *In re Valley Forge Plaza Assoc. v. Rosen Agency, Inc.,* 113 B.R. 892, 912 (Bankr.E.D.Pa.1990), *aff'd in pertinent part,* 120 B.R. 789, 801 (E.D.Pa. 1990). This, declares HP, moots Arch's loss of business and access to product claims. Second, HP charges that Arch has not indicated how its reliance on HP's alleged misrepresentations affected Arch's ability to sell printers at a discounted price.

Arch objects to HP's arguments because it attests that it has suffered actual damages. Arch claims that it suffered damages from HP's misrepresentations in that it lost the accumulated Co-op Credits that HP seized when it deauthorized Arch. This, it alleges, is actual damage. In addition, Arch asserts that claims for attorney fees and costs in underlying litigations are actual damages. *Pittsburgh Live, Inc. v. Servov,* 419 Pa.Super. 423, 615 A.2d 438, 442 (1992).

■ We agree with HP that Arch has failed to allege injury proximately caused by any alleged misrepresentations. Arch has failed to indicate, and we cannot infer, that Arch's reliance that it and the aggregators were treated similarly affected the resale price of its printers. If, for example, Arch had not relied on HP's misrepresentations, but had in fact distrusted them, the situation would have been exactly the same in that Arch and the aggregators would have received different benefits from HP. Even if we did find a causal connection, HP is correct that Arch does not plead damage from loss of the Co-op Credits in the misrepresentation claim. That allegation clearly goes to damages resulting from Arch's deauthorization, which is not at issue in this Counterclaim. *Cf.* Am. Counterclaim at ¶ 319 and ¶ 381. Further, there is no allegation that Arch and HP have been involved in any other litigation for which Arch can seek recovery. For this reason, we must dismiss both misrepresentation claims. However, we grant Arch leave to amend these claims, if it can, and for this reason, will explore HP's second argument.

HP also alleges that Arch's intentional misrepresentation claim is not pleaded with specificity under Rule 9(b). The Counterclaim, rather, alleges that HP made certain misrepresentations, which are generally identified, that HP intended Arch to rely and Arch did in fact rely on the misrepresentations. HP demands that Arch plead the date, place and time of those misrepresentations to fulfill Rule 9(b).

· Arch objects to this demand, arguing that alternative means are acceptable to plead fraud with specificity. It cites *Seville Indus. Mach. v. Southmost Mach.,* 742 F.2d 786 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) as support. In addition, it argues that when facts are within the control of corporate defendants, a plaintiff may be unable to plead the particulars and courts should be sensitive to those situations. *Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989).

■ We do not find that Arch has made allegations that place it within the ambit of either of the cases it cites. *Seville* does not help Arch because although the Court did not require the plaintiff to plead the date, place and time of the alleged misrepresentations, that was excused only because the plaintiff incorporated into the complaint a list that identified with great specificity the items of alleged misrepresentation. Arch has made no comparable pleading here. Further, *Craftmatic* does not aid Arch because Arch does not allege that the facts concerning the alleged misrepresentations are peculiarly within the control of HP. Rather, it appears that they would be in Arch's control because the statements were allegedly all made to Arch. Accordingly, we find that the Rule 9(b) requirements have not been met.

If Arch chooses to amend the intentional misrepresentation claim to allege injury, it should also amend the claim so as to plead the alleged intentional misrepresentations with particularity.

### B. Unjust Enrichment

■ Finally, HP seeks to dismiss Arch's unjust enrichment Counterclaim. HP cites

the elements of an unjust enrichment claim as follows. The plaintiff must show (1) a benefit conferred upon one party by another, (2) appreciation of such benefit by the recipient and (3) retention of the benefit under circumstances that would be unjust. *Styer v. Hugo*, 422 Pa.Super. 262, 267, 619 A.2d 347, 350 (1993), *cert. denied*, 535 Pa. 610, 637 A.2d 276 (1994). HP charges that Arch has failed to allege what benefit HP received or why such benefit is unjust.

Arch's sole response is to direct this Court and HP to a reading of paragraphs 400 and 402 of the Counterclaim.[5] These paragraphs allege that HP was benefitted by the new distribution system through decreased overhead and other named benefits. Paragraph 402 states that for "HP to retain any benefits from its actions as alleged would be inequitable."

We find that this Counterclaim states, albeit barely, a cause of action for unjust enrichment. The details of any inequity can be determined in discovery. For this reason, we deny HP's request to dismiss Arch's unjust enrichment Counterclaim.

An appropriate Order follows.

### ORDER

AND NOW, this 7th day of December, 1995, upon consideration of Plaintiff's Motion to Dismiss Counterclaims of Defendant Arch Associates Corporation (doc. no. 12) and Plaintiff Hewlett–Packard Company's Motion to Dismiss Amended Counterclaim of Defendant Arch Associates Corporation (doc. no. 17) and responses thereto, the Motions are hereby DENIED in PART and GRANTED in PART. The Motions are hereby GRANTED in that Arch's misrepresentation Counterclaims are hereby DISMISSED and ten days leave to amend in accordance with the attached Memorandum is hereby GRANTED. In all other respects, the Motions are hereby DENIED.

---

5. Arch actually directs us to paragraphs 399 and 403 but these seem not to support its argument so well as 400 and 402. We assume that Arch's directions were simply mistaken.