Mark **GROSS** and Ellen M. Sullivan, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**NEW BALANCE ATHLETIC SHOE, INC.,** Defendant.

No. 96 Civ. 4921 (RWS).
MDL–1154.

United States District Court,
S.D. New York.

Feb. 11, 1997.

---

Bernstein Litowitz Berger & Grossmann (Jeffrey A. Klafter, Seth R. Lesser, of counsel), New York City, for Plaintiffs.

Curtis, Mallet–Prevost, Colt & Mosle (Turner P. Smith, of counsel), New York City, for Defendant.

## *OPINION*

SWEET, District Judge.

Defendant New Balance Athletic Shoe, Inc. ("New Balance") has moved to dismiss Plaintiffs' antitrust class action lawsuit and certain pendent state law claims.

For the reasons set forth below, New Balance's motion will be granted.

### *Parties*

Defendant New Balance is an athletic shoe manufacturer.

Plaintiffs Ellen M. Sullivan ("Sullivan") and Mark Gross ("Gross") are individuals residing in New York, New York.

### *Background*

For purposes of the instant motion to dismiss, the allegations of the complaint are taken as true. The facts are presented below accordingly, and do not constitute factual findings.

On June 12, 1996, the Federal Trade Commission ("FTC") announced that New Balance had agreed to settle charges that it had engaged in a vertical resale price mainte-.nance scheme to fix the resale prices of its shoes in violation of antitrust laws. The settlement was the result of coordinated investigations by the FTC and the Attorneys General of New York and the other forty-nine states of pricing policies in the athletic shoe industry. Pursuant to the settlement, New Balance, which had a 2% share of the market, signed a Consent Order with the FTC.[1]

On June 27, 1996, Plaintiffs filed the instant action, relying extensively on the allegations used by the FTC in the Consent Order. The Complaint alleges two causes of action: one under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) alleging violation of Section 1 of the Sherman Act and the other under Section 349(h) of New York's Consumer Protection from Deceptive Acts and Practices Act (Article 22–A, General Business Law § 349(h)).

The named Plaintiffs allege that between 1991 and 1996, New Balance, a large athletic footwear manufacturer, engaged in a systemic and nationwide scheme to coerce retail shoe dealers to enter into express or tacit agreements to fix or maintain the prices of New Balance footwear. To obtain agreement from recalcitrant retailers to adhere to its price maintenance scheme, New Balance allegedly engaged in surveillance of retail prices, threats to terminate or suspend shipments to discounting retailers, and demands that retailers raise their prices. The result of New Balance's scheme was that price competition among retailers of New Balance shoes was restricted and the prices of New Balance shoes were inflated to the detriment of consumers, such as the present Plaintiffs.

Plaintiffs allege they "purchased New Balance footwear and suffered economic injury" as a result of New Balance's alleged wrongful conduct. Plaintiffs purportedly have brought the action "on their own behalf and on behalf of all members of a class ... consisting of all persons situated in the United States who purchased New Balance footwear through retail shoe sellers" over a four-year period. As a result of the conspiracy, Plaintiffs allege that they "and the other Class members paid

---

**1.** As a further result of the investigation, two additional athletic shoe manufacturers signed consent orders with the FTC and settled "companion" parens patriae suits filed in this Court by the fifty states and the District of Columbia. *See State of New York ex rel Vacco v. Reebok* *International Ltd.,* 903 F.Supp. 532 (S.D.N.Y. 1995); *State of New York ex rel Koppell v. The Keds Corporation,* 1994 WL 97201 (S.D.N.Y. 1994). New Balance was not sued in the *parens patriae* acts.

more for such shoes" than they otherwise would have paid.

The instant motion to dismiss was filed on September 10, 1996. Oral argument was heard on December 4, 1996, at which time the motion was considered fully submitted.

On February 6, 1997, the Judicial Panel on Multidistrict Litigation granted New Balance's motion to transfer to this district all pending actions in this multidistrict litigation, MDL–1154, *In re New Balance Athletic Shoe, Inc., Antitrust Litigation,* pursuant to 28 U.S.C. section 1407.

## Discussion

### I. Standards for Reviewing a 12(b)(6) Motion

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor and against the defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations considered here are presumed to be true only for the purpose of deciding the present motions.

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). *Accord Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) (quoted in *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 250–51, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989)).

"In practice 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory.'" *Fort Wayne Telsat v. Entertainment & Sports Prog. Network,* 753 F.Supp. 109, 111 (S.D.N.Y.1990), *quoting, Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984).

Rule 8(a)(2) of the Federal Rules of Civil Procedure mandates that a complaint contain a "short and plain statement of the claim" that demonstrates "that the pleader is entitled to relief." The Federal Rules do "not permit conclusory statements to substitute for minimally sufficient factual allegations." *Furlong v. Long Island College Hosp.,* 710 F.2d 922, 927 (2d Cir.1983).

▮ The burden on a plaintiff alleging federal antitrust violations is no greater than the burden faced by a plaintiff alleging any cause of action not covered by the specific pleading requirements of Rule 9 of the Federal Rules of Civil Procedure. *See George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 554 (2d Cir.1977) ("It ... [is] clear in this circuit ... that a short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules," *citing Nagler v. Admiral Corp.,* 248 F.2d 319 (2d Cir.1957)); *Nagler,* 248 F.2d at 322–23 ( [it is] "quite clear that the federal rules contain no special exceptions for antitrust cases"); *Barr v. Dramatists Guild, Inc.,* 573 F.Supp. 555, 558 (S.D.N.Y.1983) (citing *George C. Frey* for the proposition that there are no special pleading standards for antitrust conspiracy); *Newburger v. Gross,* 365 F.Supp. 1364, 1367–68 (S.D.N.Y. 1973) (citing *Nagler* for the proposition that there are no special pleading requirements in antitrust litigation), *modified on other grounds,* 563 F.2d 1057 (2d Cir.1977); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.,* 711 F.2d 989, 995 (11th Cir.1983) ("It is now well accepted that notice pleading is all that is required for a valid antitrust complaint").

While the Supreme Court has noted in the context of large antitrust action that "[c]ertainly in a case of this magnitude, a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to procede[,]" *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 903 n. 17, 74 L.Ed.2d 723 (1983), the

Court recently affirmed that the liberal system of notice pleading applies to all causes of action unless otherwise specified in the Rules. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 163–65, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993).

## II. *The Complaint Will Be Dismissed*

Section One of the Sherman Act reads, in relevant part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony. . . .

15 U.S.C. § 1 (1973).

### A. *Plaintiffs Lack Standing to Bring This Action*

 Defendants contends that Plaintiffs lack standing to bring the instant antitrust action. Section 4 of the Clayton Act authorizes a private right of action for a person who is "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. The scope of authority conferred by § 4 is limited, however, by judicially crafted standing rules that purposefully narrow the class of individuals entitled to maintain a private damages claim under § 4. *See, e.g., Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990).

The Supreme Court has articulated five factors that are to be considered in determining whether a particular plaintiff has "antitrust standing." *See Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters ("AGC"),* 459 U.S. 519, 537 n. 33, 103 S.Ct. 897, 908 n. 33, 74 L.Ed.2d 723 (1983). These factors are:

(1) the causal connection between an antitrust violation and the harm suffered by the plaintiff, and the intent of the defendants to cause that harm;

(2) whether the plaintiff suffered antitrust injury;

(3) the directness of the asserted injury to the plaintiff;

(4) the existence of more direct victims of the antitrust violation; and

(5) the potential for duplicative recovery or complex apportionment of damages.

*AGC* at 537–44, 103 S.Ct. at 908–12; *see also Crimpers Promotions Inc. v. Home Box Office, Inc.,* 724 F.2d 290, 296–297 (2d Cir. 1983); *Sullivan v. Tagliabue,* 25 F.3d 43, 46 (1st Cir.1994).

Plaintiffs here allege that "certain," not all, of New Balance's retailers participated in the conspiracy. Defendants contend that because the Plaintiff class includes all purchasers of New Balance athletic shoes, and is not limited to those who purchased from the conspiring retailers, the complaint fails to allege any injury sufficiently direct to fall within the purview of § 4.

According to Defendants, in order to demonstrate standing, Plaintiffs must be able to allege that they purchased from a conspiring retailer and that New Balance therefore engaged in wrongful conduct with respect to them. Otherwise, the causal link between the putative antitrust violation and any injury sustained by Plaintiffs is too remote to be justiciable under § 4. *See Reading Indus., Inc. v. Kennecott Copper Corp.,* 631 F.2d 10 (2d Cir.1980) (antitrust standing tests are "ultimately tests of whether there is a legally sufficient causal relationship between the alleged violation and the alleged injury").

Plaintiffs contend that regardless of whether a consumer purchased New Balance shoes from a conspiring retailer or a non-conspiring retailer, that consumer was injured because the conspiracy, if successful, stifled price competition for, and raised the price of, all New Balance shoes.

*Mid–West Paper Prod. Co. v. Continental Group, Inc.,* 596 F.2d 573, 583–87 (3d Cir. 1979), is the only decision of which the Court is aware which directly addresses the question whether those who purchased from non-conspiring retailers have standing, based on the conspiracy's alleged effect on all the company's goods, to bring an antitrust action.

The plaintiff in *Mid–West Paper*, like Plaintiffs here, purchased from a competitor of the defendants. The *Mid–West Paper* plaintiff asserted standing based on the alleged conspiracy's effect on the general price level in the market, and alleged that non-conspirators sold under this "umbrella" at higher prices than they would have absent the price-fixing scheme. The plaintiff claimed that it suffered antitrust injury because it bought from a non-participating competitor at the higher price. The Court rejected this contention and held that the plaintiff lacked standing to bring an antitrust action. *Mid–West Paper*, 596 F.2d at 587. *See also Liang v. Hunt*, 477 F.Supp. 891, 896–97 (N.D.Ill. 1979) (same); *Pollock v. Citrus Assoc. of the New York Cotton Exchange, Inc.*, 512 F.Supp. 711, 719 n. 9 (S.D.N.Y.1981) (distinguishing *Mid–West Paper* and holding the "severe difficulties attendant with proving damages in an "umbrella" pricing situation" were not present).

The cases cited by the Plaintiffs do not support the contention that all purchasers, regardless of whether they purchased from a conspiring retailer, have antitrust standing. In *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3rd Cir.1977), the court simply held that "[t]he fact that a customer has not made purchases from every co-conspirator does not prevent him from suing all for each co-conspirator contributed to the charging of the supracompetitive price paid by the purchaser." *Bogosian*, 561 F.2d at 448. In *Bogosian*, each of the plaintiffs had direct dealings with at least one of the conspiring defendants. Thus, the Court did not address the question presented here—whether a plaintiff who did not purchase from any conspirator nonetheless has standing to bring an antitrust suit.

*Donahue v. Pendleton Woolen Mills, Inc.*, 633 F.Supp. 1423, 1429 (S.D.N.Y.1986), upon which Plaintiffs also rely, held that resale price maintenance conspiracies like the one alleged here "directly coerce retailers, who must charge the price suggested by the manufacturer if they wish to continue carrying the product line," but ultimately affect consumers, who "pay the economic cost of such conduct in the higher prices set by the manufacturer." The *Donahue* Court did not, however, address whether all consumers—not just consumers who purchased from a conspiring retailer—could claim antitrust standing arising from an "umbrella" price increase allegedly caused by an RPM.

Plaintiffs' attempt to seek recovery for all consumers of New Balance athletic shoes during the alleged class period places their claim in the category of the type of indirect injury that is incapable of being quantified with any degree of economic certainty. Plaintiffs will be unable to demonstrate that those who purchased New Balance shoes from a non-conspiring retailer suffered damages, *i.e.*, paid more for their shoes, because of the effects of the alleged conspiracy. Non-conspiring retailers may have independently raised or maintained their prices for any number of reasons, or may even have lowered their prices. Accordingly, those who purchased from such retailers could not show an injury caused by a violation of the antitrust laws.

The *Mid–West Paper* Court recognized these difficulties in identifying and quantifying damages resulting from indirect injury such as that alleged by Plaintiffs here. The Court held that "the outcome of any attempt to ascertain what price the Defendants' competitors would have charged had there not been a conspiracy would at the very least be highly conjectural." *Mid–West Paper*, 596 F.2d at 584. The Court observed that the non-participating competitor might very well have charged the same price even absent the conspiracy, and the plaintiff would be "hard pressed to prove otherwise." *Id.; see also Sullivan*, 25 F.3d at 52 ("highly speculative" nature of plaintiff's damages claim weighed against a grant of standing); *Reading Indus., Inc.*, 631 F.2d at 13–14 (plaintiff lacked antitrust standing to assert claims based on conjectural theories of injury and attenuated economic causality).

In sum, the factors outlined by the Supreme Court in *AGC* weigh against finding that consumers who purchased from non-conspiring retailers have standing to assert an antitrust claim. In particular, Plaintiffs' alleged injury was suffered, if at all, only indirectly as a result of a general

price increase which in turn resulted from the direct effects of the conspiracy; the causal connection between the alleged injury and the conspiracy is attenuated by significant intervening causative factors (*i.e.,* independent pricing decisions of non-conspiring retailers); and more direct victims of the alleged conspiracy exist in those who purchased directly from conspiring retailers, such that denying Plaintiffs a remedy on the basis of their allegations in this case is "not likely to leave a significant antitrust violation undetected or unremedied." *AGC,* 459 U.S. at 542, 103 S.Ct. at 910.

Accordingly, Plaintiffs as currently defined in the complaint lack standing to brings this action. The complaint will be dismissed, and Plaintiffs will be granted leave to replead within thirty (30) days of the issuance of this Opinion.

### B. *Plaintiffs Need Not Identify Alleged Co–Conspirators* [2]

█ Defendant claims that the complaint is deficient because it alleges only that "certain" retailers conspired with New Balance in the resale price maintenance scheme but does not identify those co-conspirators. Although New Balance cites several cases that have required the specific naming of co-conspirators in antitrust complaints, the weight of authority does not endorse such a requirement, particularly where, as here, the relevant information regarding the identities of co-conspirators is "largely in the hands of the alleged conspirators." *Poller v. Columbia Broadcasting,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Under such circumstances, "dismissal prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

Consumer antitrust plaintiffs like those here have even less ability to determine the identities of a manufacturers' co-conspirators than do most antitrust plaintiffs, who are generally economic competitors. This Court has held:

> Evidence of the specific identity of exhibitors, attendees, speakers and suppliers who allegedly have acted in concert with defendant, is largely in defendant's hands. Plaintiff should be allowed to conduct full discovery in order possibly to further substantiate such claims. Thus, the court will not dismiss Count I of the complaint.

*Expoconsul Int'l, Inc. v. A/E Systems, Inc.,* 711 F.Supp. 730, 735 (S.D.N.Y.1989).

Only one decision in this district dismissed an antitrust claim based on the plaintiff's failure to name co-conspirators is *North Jersey Secretarial School, Inc. v. McKiernan,* 713 F.Supp. 577, 584 (S.D.N.Y.1989), in which the Court was presented with a barebones complaint that alleged that the defendant's employees had conspired with plaintiff's "competitors," and gave no other indication of how the identity of these co-conspirators might be discerned. Here, the Plaintiffs have alleged that New Balance's co-conspirators are "certain" of New Balance's retailers. While New Balance's retailers may number in the hundreds, they nonetheless constitute a finite universe, and one from which a subset of New Balance's co-conspirators might be readily identified. *See Hewlett–Packard Co. v. Arch Associates Corp.,* 908 F.Supp. 265, 269 (E.D.Pa.1995) (motion to dismiss denied where "pleading alleges that HP combined with certain members of its distribution network" which is a "finite group whose members can be determined through discovery").

> As the Ninth Circuit has held:
>
> The 'other' distributors are not named, nor are their numbers or locations or other similar facts stated. While some cases seem to require such allegations, we do not think that they are required. A plaintiff need not sue all conspirators; he may choose to sue but one. Even in a criminal antitrust case, the government need not name the conspirators not sued, nor state their number, in the indictment.

---

**2.** Although the Court, having already determined that alternate grounds warrant dismissal, need not address this portion of Defendant's argument, the Court will nonetheless address this question in order to avoid relitigation of this motion to dismiss in the event Plaintiffs refile the Complaint in accordance with the Court's standing analysis.

*Walker Distributing Co. v. Lucky Lager Brewing Co.,* 323 F.2d 1, 8 (9th Cir.1963) (citations omitted); *accord, e.g., William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,* 668 F.2d 1014, 1053 (9th Cir.1981); *Christen Inc. v. BNS Indus., Inc.,* 517 F.Supp. 521, 524 (S.D.N.Y.1981).

### C. *The Manageability of this Case as a Class Action Is Not Relevant at this Stage*

New Balance contends that this case should be dismissed because management of the case as a class action would be overly burdensome. This argument, however, pertains to whether class action treatment is appropriate under Federal Rule of Civil Procedure 23(b), and does not shed light on whether dismissal is warranted pursuant to Rule 12(b)(6). It is thus inappropriate at this stage of the proceedings, and accordingly will not be addressed.

### III. *The State Law Claims Will Be Dismissed*

Since, as set forth above, Plaintiffs' Sherman Act claims will be dismissed at this early phase of the proceedings, the Court will not exercise jurisdiction over the state law claims. *See Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir.1991) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") *quoting United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Plaintiffs' state law claims will be dismissed without prejudice however, and may be refiled along with a refiled complaint that limits the Plaintiff class to those who purchased New Balance shoes from conspiring retailers.

### Conclusion

For the reasons set forth above, New Balance's motion to dismiss is hereby granted. Plaintiffs are granted leave to refile within thirty (30) days of issuance of this Opinion.

It is so ordered.